**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DWAYNE E. EGGERS,
                              Plaintiff,

   v.                                        No. 04-CV-1392
                                                  (TJM/DRH)
JO ANNE B. BARNHART, Commissioner of
Social Security,
                              Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

HINMAN, HOWARD & KATTELL, LLP     EUGENE D. FAUGHNAN, ESQ.
Attorney for Plaintiff
Post Office Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, New York 13902-5250

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff Dwayne E. Eggers ("Eggers") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Eggers moves for a finding of disability and the Commissioner cross-moves for a judgment on the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

pleadings. Docket Nos. 5, 8. For the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On July 9, 2003, Eggers filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 57-59.[2] That application was denied on August 13, 2003. T. 21-24. Eggers requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Melvin D. Benitz on May 12, 2004. T. 12, 27. In a decision dated July 20, 2004, the ALJ held that Eggers was not entitled to disability benefits. T. 19. On September 21, 2004, Eggers filed a request for review with the Appeals Council. T. 235-56. The Appeals Council denied Eggers' request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 5-7. This action followed.

## II. Contentions

Eggers contends that the substantial weight of the medical evidence supports a finding of disability and that the ALJ erred when he failed properly to credit the treating physicians' opinions and Eggers' allegations of disabling pain, and failed to demonstrate that significant jobs existed in the national economy that Eggers could perform. The Commissioner contends that there was substantial evidence to support the determination

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 4.

that Eggers was not disabled.

### III. Facts

The facts contained in Eggers' brief are adopted and are not disputed by the Commissioner, except for any inferences or legal conclusions drawn therein. Def. Mem. of Law (Docket No. 8) at 2. Eggers, now forty-three, previously worked as a sales manager and a tire changer. T. 13, 57. Eggers has a high school education and three years of college. T. 278. Eggers alleges that he became disabled on March 12, 2003 due to back, neck, leg, and arm problems. T. 13.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V. Discussion

### A. Medical Evidence

After suffering a work-related injury on September 11, 2002, Eggers sought treatment from his chiropractor, Dr. Donna Hapeman-Rodriguez, for a cervical spine sprain and a lumbosacral sprain. T. 128. Dr. Hapeman-Rodriguez continued to treat Eggers and eventually referred him to Dr. David C. Y. Kung, a neurosurgeon. T. 155. On March 10, 2003, Dr. Kung reviewed Eggers' MRI scans and concluded that they showed some degenerative discs but no herniated discs. Id. Dr. Kung evaluated Eggers again in April

5

2003 and concluded that there was some disc bulging in the cervical region, but there was no severe spinal cord compression. T. 154. Dr. Kung ordered steroid injections in an attempt to address Eggers' pain. T. 153. In May 2003, Eggers received two steroid injections from Dr. Brent A. Samter. T. 138-44.

On June 11, 2003, Eggers was examined by Dr. Albert Kochersperger. T. 158. Dr. Kochersperger concluded that Eggers had a "marked degree of disability . . . considering his need for multiple drugs, his limitations in standing, sitting, driving, and not tolerating any lifting, has markedly limited trunk mobility, positive diagnostic tests of thoracic MRI and limited response to chronic pain management to date." T. 160. Shortly after, Dr. Saeed Bajwa administered a neurological evaluation of Eggers and concluded that he suffered from severe mid-thoracic pain, neck pain without clear evidence of cervical radiculopathy, a herniated thoracic disc, and a slight central bulge at C3-4. T. 164. On July 25, 2003, Dr. John Cusick, an internist, examined Eggers and found that he suffered a moderate-to-marked limitation in various sustained activities such as walking, bending, and lifting. T. 171.

On September 5, 2003, Eggers was examined by Dr. James Holsapple. T. 197. Dr. Holsapple concluded that Eggers suffered from diffuse degenerative disc disease, but noted that there were no signal abnormalities in his spinal cord. Id. During subsequent examinations, Dr. Holsapple found that Eggers suffered from chronic neck and low back pain and cervical spondylosis. T. 194-95. In February 2004, Eggers began seeing Dr. Murli Agrawal. T. 225. Dr. Agrawal examined Eggers on four separate occasions between February and May, 2004, eventually concluding that he was "totally disabled." T. 225-34.

6

On July 17, 2003, Eggers began seeing Dr. Patrick J. Bayait for treatment of his depression. T. 221. Dr. Bayait continued to treat Eggers for depression until April 21, 2004. Id. Dr. Bayait found that Eggers had poor-to-no ability to make occupational, social, or performance adjustments. T. 221-24.

### B. Treating Physician's Rule

Eggers contends that the ALJ erred when he failed to contact Dr. Bayait to obtain his treatment notes in order further to evaluate Dr. Bayait's conclusions.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw, 221 F.3d at 134. Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the

record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see also 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

 Dr. Bayait began treating Eggers on July 17, 2003 and continued to treat him until April 21, 2004. T. 221. In May 2004, Dr. Bayait completed a Social Security Medical Assessment form in which he diagnosed Eggers as having depressive reaction that was aggravated by pain. T. 221-24. Dr. Bayait also concluded that Eggers had poor to no ability to make occupational, performance, or personal/social adjustments. T. 16, 221-24. However, the ALJ accorded little weight to Dr. Bayait's opinion because his treatment notes were not submitted and, thus, the ALJ was unable to evaluate the basis of his conclusions. T. 16. Eggers contends that the ALJ was obligated to contact Dr. Bayait to clarify his opinion and request his treatment notes. Pl. Mem. of Law (Docket No. 5) at 12.

 "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982). The Secretary's regulations state, in relevant part, that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application" and "make every reasonable effort to help you get medical reports from your own medical sources." 20 C.F.R. § 404.1512(d); see also Foster v. Callahan, No. Civ. 96-1858 (RSP/GJD), 1998 WL

106231, at *5 (N.D.N.Y. Mar. 3, 1998) ("An ALJ should make 'every reasonable effort' to obtain treating source evidence, and if the treating source provides an incomplete report, the ALJ must 'request the necessary additional information from the treating source.'") (citations omitted)); SSR 96-5p, 1996 WL 374183, at *6 (S.S.A.).

Here, the ALJ afforded little weight to Dr. Bayait's conclusions "because the claimant's [Eggers] treatment notes have not been submitted . . . [and,] [t]herefore, it is impossible to evaluate the basis for his conclusions." T. 16. However, there is no evidence in the record that the ALJ made any "reasonable effort" to obtain these treatment notes before summarily affording little weight to Dr. Bayait's conclusions. Thus, remand is appropriate. See Gutzman v. Apfel, 109 F. Supp. 2d 1129, 1134 (D. Neb. 2000) (holding that if the ALJ believed that the absence of the medical records of a treating physician was important, the ALJ was obligated to seek them out before rejecting the doctor's opinion).

The Commissioner contends that the ALJ's failure to accord Dr. Bayait's opinion controlling weight was proper because contrary to Dr. Bayait's representation, he does not have a Ph.D. in psychology and instead is a Licensed Pastoral Counselor through the National Christian Counselors Association. Def. Mem. of Law at 19.[3] Therefore, the Commissioner argues that under 20 C.F.R. § 404.1513, Dr. Bayait is not an acceptable medical source. However, nothing in the record indicates that Dr. Bayait's credentials were ever questioned by the ALJ. Thus, the Commissioner's contention that Dr. Bayait is not an

---

[3] The Commissioner cited a website for HIS Counseling Services, Professional Christian Counseling in an apparent attempt to support its contention that Dr. Bayait does not possess a Ph.D. in psychology. However, the website does not appear to be operating anymore and, thus, no biographical information on Dr. Bayait could be found.

acceptable medical source under the regulations is without merit.

Accordingly, because the ALJ failed to make any reasonable efforts to obtain Dr. Bayait's treatment notes before affording little weight to his conclusions, the case should be remanded for further development of the record.

### VI. Conclusion[4]

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further development of the record.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: November 16, 2006
          Albany, New York

_David R. Homer_
United States Magistrate Judge

---

[4] On the current record, it appears that there was substantial evidence to support the ALJ's finding of disability. However, in light of the remand of the case, it is unnecessary to address these issues at this time.